IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                             Cr. No. 11-1866 BB

MICHAEL KELLY,

    Defendant.

## MEMORANDUM OPINION ON SENTENCING

Defendant Michael Kelly pled guilty to one count of receiving child pornography, in violation of 18 U.S.C. § 2552(a)(2). The offense carries a minimum term of 5 years' and a maximum term of 20 years' imprisonment. 18 U.S.C. § 2252(b)(1). The Sentencing Guidelines recommend a sentence of 87 to 108 months imprisonment, with a term of supervised release for 5 years to life. As explained below, such a sentence would be unreasonable and contrary to 18 U.S.C. § 3553(a). Therefore, Mr. Kelly has been sentenced to 60 months in prison, followed by 5 years of supervised release, in addition to a fine of $5,000 and a special assessment of $100.

## Discussion

When imposing sentences, a district court must "treat the Guidelines as the starting point and initial benchmark." *Kimbrough v. United States*, 552 U.S, 85, 108 (2007) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)) (quotations omitted). The Guidelines are only advisory, and a district court must next consider the sentencing factors set forth in 18 U.S.C. § 3553(a). A district court should not presume a Guideline sentence will always satisfy § 3553(a), because the

Guidelines are only "a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 351 (2007); *United States v. Booker*, 543 U.S. 220, 245 (2005). A district court has a duty independent from the Sentencing Commission to ensure that the § 3553(a) factors are met. A court is free to reject a Guidelines sentence, "perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless." *Rita*, 551 U.S. at 350-51. A sentencing judge also "may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*, 552 U.S. at 101.

## I.   GUIDELINE CALCULATION

The applicable Sentencing Guideline is U.S.S.G. § 2G2.2. Defendant Kelly's Pre-Sentence Report ("PSR") set a base offense level of 22. Five specific offense characteristics apply: a 2-level reduction because Kelly did not intend to distribute materials (§ 2G2.2(b)(1)); a 2-level enhancement for material involving a minor under twelve (§ 2G2.2(b)(2)); a 4-level enhancement for material that depicts violence (§ 2G2.2(b)(4)); a 2-level enhancement for the use of a computer (§ 2G2.2(b)(6)); and a 4-level enhancement for receiving over 300 but fewer than 600 images (§ 2G2.2(b)(7)(C)). Following a 3-level reduction for acceptance of responsibility under § 3E1.1, Kelly's total adjusted offense level is 29. Kelly has no criminal history and thus has a criminal-history category of I. This results in a recommended Guidelines sentence of 87-108 months.

**II.    SECTION 3553(A) FACTORS**

Under 18 U.S.C. § 3553(a), a district court should impose a criminal sentence only after considering: the nature and circumstances of the offense; the history and characteristics of the defendant; the advisory guideline range; the need for a sentence to be sufficient but not greater than necessary to satisfy the goals of sentencing (punishment, deterrence, public protection, and rehabilitation); the kinds of sentences available; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities; and the need to provide restitution to victims.

**A.    The Offense**

Defendant Kelly admits to receiving and viewing images and videos of child pornography which he accessed on the internet. Victims of child pornography suffer both physical injury and deep-seated, enduring psychological torment. Some child victims report they feel re-victimized every time they are informed someone views the images that memorialize the brutal pain and shame they have suffered. They live in fear that anybody they meet in person could recognize them from these images. Congress and society have rightfully condemned these crimes against children. Yet within the realm of these crimes, there remains an important distinction between those who create and facilitate child pornography and those who only view it. Kelly has not been accused of creating child pornography or molesting children, and there is no evidence he would likely do so in the future.

**B.      The Defendant**

Defendant Kelly has no criminal background.  Kelly is 34 years old and lives at home with his parents.  He is debilitated by social anxiety, panic attacks, depression, and suicidal thoughts, which became increasingly incapacitating in his twenties.  He describes having a troubled upbringing, was bullied in his youth, and has had very few friends throughout his life.  He has never had a sexual or romantic relationship with another person.

In 2004, Kelly began therapy and medication, which helped enable him to leave the house and seek employment for the first time in six years.  However, he has been unable to overcome his fear of driving, and has never held a license.  Kelly's therapists have recorded his severe fear of failure, fear of rejection, low self-confidence, feelings of inadequacy, social anxiety disorder, and depression.

Kelly says he began looking at pornographic images when he was a teenager.  Since being arrested, Kelly has sought treatment and has reportedly made significant progress.  He has not denied or attempted to justify his actions, but has instead said he feels extreme remorse and is "sickened" by his own behavior.  His psychiatrist and his therapist state they do not see Kelly as a potential child molester.  They believe he is no danger to others.  They also believe prison would have "destructive and devastating effects on him" and would not be rehabilitating.  Indeed, because of the distorted and bizarre hierarchy of prison culture, Kelly may be subject to serious danger in prison.[1]

---

[1] The last defendant this Court was required to sentence to the mandatory five-year prison term for receipt of child pornography, a 72-year old retired attorney, was beaten to death within days of arriving at the federal penitentiary.

**C.    Advisory Guideline Range**

<u>1.  The Sentencing Commission Did Not Use Its Usual Expertise to Draft § 2G2.2</u>

Under U.S.S.G. § 2G2.2, Kelly's Guideline sentence is a range of 87-108 months. However this Guideline, § 2G2.2, is not the product of the Sentencing Commission's usual institutional competence and expertise, but is instead the result of numerous politically-based Congressional directives.  Originally, the Sentencing Commission drafted § 2G2.2 with significantly lower sentences.  Congress has since repeatedly mandated that the Guideline be amended, each time to increase the penalties; often overriding the Sentencing Commission's expert judgment to the contrary.[2]  With each amendment, "major changes would come from Congress, and would be dictated not by experience and study, but instead by a general, moral sense that the penalties for 'smut peddlers' should always, and regularly, be made stricter, not weaker."[3]  Quoting a Wisconsin opinion with approval, the Tenth Circuit has remarked that "[t]hese modifications do not appear to be based on any sort of empirical data, and the Court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-related offenses."  *United States v. Regan*, 627 F.3d 1348, 1353

---

[2] *See generally* United States Sentencing Commission, *The History of the Child Pornography Guidelines* (Oct. 2009), *available at* http://www.ussc.gov/Research/Research_ Projects/Sex_Offenses/index.cfm [hereinafter USSC, *History of the Child Pornography Guidelines*].  Though the full history of the Guideline need not be recited here, several courts have detailed the 25-year tug-of-war between Congress and the Sentencing Commission.  *See United States v. Henderson,* 649 F.3d 955, 960 (9th Cir. 2011); *United States v. Grober*, 624 F.3d 592, 604-07 (3d Cir. 2010); *United States v. Dorvee*, 616 F.3d 174, 184-86 (2d Cir. 2010); *United States v. Diaz*, 720 F. Supp. 2d 1039, 1042 (E.D. Wis. 2010).

[3] Troy Stabenow, *Deconstructing the Myth of Careful Study:  A Primer on the Flawed Progression of the Child Pornography Guidelines* (Jan. 1, 2009), at 8-9, *available at* http://www.fd.org/pdf_lib/child%20porn%20july%20revision.pdf [herein after Stabenow, *Myth of Careful Study*] (quoting Sen. Jesse Helms).

(10th Cir. 2010).[4]  Perhaps the Commission's expertise has been set aside so often because "[c]rimes involving the exploitation of children provide fertile ground for grandstanding politicians." *United States v. Cunningham*, 680 F. Supp. 2d 844, 849 (N.D. Ohio 2010).

2.  Federal Circuit Courts Disapprove of § 2G2.2

The child pornography Guideline has come under significant judicial criticism for being based on politics rather than data, and Circuit courts routinely find that § 2G2.2 is unworthy of serious deference.  "[B]ased on the history of the child pornography guidelines as the Commission has keyed them into policy and statutory mandates, the sentencing ranges of imprisonment are a less reliable appraisal of a fair sentence." *Regan*, 627 F.3d at 1353 (quoting *United States v. Baird*, 580 F. Supp. 2d 889, 893-94 (D. Neb. 2008)) (quotations omitted).  The Second Circuit recently set aside a below-Guideline sentence for being too *high,* and warned that § 2G2.2 is "an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results." *United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010).  The Third Circuit similarly found that § 2G2.2 "is not worthy of the weight afforded to other Guidelines" when a mechanical application of the Guideline caused an "outrageously high" sentence.  *United States v. Grober,* 624 F.3d 592, 595, 607 (3d Cir. 2010).  The First Circuit criticized a district court for failing to use its *Kimbrough* discretion to disregard § 2G2.2, while emphasizing that "we wish to express our view that the sentencing guidelines at issue are in our

---

[4] The Tenth Circuit quoted *United States v. Hanson*, 561 F. Supp. 2d 1004, 1010-11 (E.D. Wis. 2008), but on procedural grounds, failed to reach a holding as to whether sentences under § 2G2.2 are presumptively unreasonable.

judgment harsher than necessary." *United States v. Stone*, 575 F.3d 83, 97 (1st Cir. 2009); *see also United States v. Henderson*, 649 F.3d 955, 963-64 (9th Cir. 2011).

3.  District Courts Frequently Disregard the Sentences Recommended by § 2G2.2

A district court need not defer to an irrational guideline that fails to meet the goals of sentencing and does not exemplify the Commission's expertise. *Kimbrough*, 552 U.S. at 109. As the Supreme Court emphasized in *Rita*, district judges and the Sentencing Commission each have an independent duty to ensure that the sentencing goals outlined in § 3553(a) are met. 551 U.S. at 351. Because the Commission's hands have been tied by Congress, and it is unable to fulfill its purpose with respect to § 2G2.2, it is especially important that district judges exercise discretion when sentencing under this Guideline. Section 2G2.2 is "a Guideline that is fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires." *Dorvee,* 616 F.3d at 184. District judges across the country have therefore consistently rejected the sentences that this Guideline recommends. *See United States v. Diaz*, 720 F. Supp. 2d 1039, 1041 (E.D. Wis. 2010) (gathering sources). As a result, the Sentencing Commission has found that "[f]or the past several years, § 2G2.2 has had a high and increasing rate of downward departures and below-guideline variances." *Grober*, 624 F.3d at 606.[5] The Commission recently surveyed district judges and found that 69% believe the Guideline range for receipt of child pornography is too high.[6]

---

[5] citing USSC, *History of Child Pornography Guidelines*, at 54.

[6] United States Sentencing Commission, *Results of Survey of United States District Judges January 2010 through March 2010* (June 2010), *available at* http://www.ussc.gov/

**D.     The Goals of Sentencing: Punishment, Deterrence, Public Protection, and Rehabilitation**

1.  The Guideline Fails the Goals of Sentencing Because it Fails to Differentiate Among Defendants

Federal criminal sentences are imposed with an aim to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment; to afford adequate deterrence to criminal conduct; to protect the public from the defendant's further crimes; and to rehabilitate the defendant. 18 U.S.C. 3553(a)(2). These goals can only be met when more severe crimes are punished by harsher sentences, and thus courts need to avoid unwarranted similarities among defendants who are not similarly situated. *Gall*, 552 U.S. at 55. Therefore, when sentencing under § 2G2.2, courts "must differentiate between those who create child pornography and those who consume it." *United States v. Cruikshank*, 667 F. Supp. 2d 697, 702 (S.D. W. Va. 2009). Yet the child pornography Guideline creates no distinction between consumption of child pornography and the far worse crimes of producing or mass-distributing it. Section 2G2.2's base offense, combined with enhancements that were "cobbled together" by Congress, "routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases." *Dorvee*, 616 F.3d at 186.

Because § 2G2.2 punishes the worst crimes no more severely than routine offenses, and small-scale offenders have no incentive to keep from escalating their crimes, the goals of sentencing cannot be met. *See Kimbrough,* 552 U.S. at 98 (criticizing the cocaine Guideline for punishing small-scale crack users more harshly than large-scale powder dealers). Courts cannot "safely assume that bringing as many consumers as possible within the reach of the law is the

Research/Research_Projects/projects.cfm

most effective way to lessen or eliminate the trade: [a] policy of draconian enforcement directed at the most minor and peripheral of users is perhaps no more likely to eliminate child pornography than a similar policy would be to eliminate illegal drugs. *People v. Kent*, 2012 N.Y. LEXIS 986, at *22 (N.Y. May 8, 2012) (Smith, J., concurring).

Nonetheless, the Government contends that extremely severe punishments are reasonable for consumers because a "solution to effectively combat the rising tide of sexual exploitation of children is for legislatures to authorize penalties severe enough to sufficiently deter pornographers from ever beginning the practice of exploiting children for sexual purposes" [Doc. 40 at 8]. The Court is aware of absolutely no evidence suggesting that increased penalties for the consumers of child pornography have decreased the swell of child pornography produced or posted to the internet, or deterred "hands-on" abuses against children. To the contrary, while prosecutions of child pornography have skyrocketed, prosecutions of actual sexual abuse of children have remained constant.[7] The Government's logic is especially flawed considering that, "[i]n an instance of troubling irony, an individual who, sitting alone, obtained images of sexually exploited children on his computer, could receive a higher sentence than the Guidelines would recommend for an offender who actually rapes a child." *Cruikshank*, 667 F. Supp. 2d at 702; *see also, e.g., Dorvee*, 616 F.3d at 187 ("Had Dorvee actually engaged in sexual conduct with a minor, his applicable Guidelines range could have been considerably lower."); *Stone*, 575 F.3d at 96. Here, Kelly's Guideline sentence for receiving pornography is higher than the Guideline

---

[7] Stabenow, *Myth of Careful Study*, at 14. One of the most recent cases in this Court involved postings of images from Eastern Europe in an attempt to obtain credit card data. Obviously, giving American defendants, many of whom are unaware it is a crime, more of the draconian penalties, is not going to stop monsters in the rest of the world from grossly abusing young children.

sentence for abusive sexual contact with a minor, or for statutory rape.  *See* U.S.S.G. §§ 2A3.4; 2A3.2.

 2.  The Guideline Fails to Differentiate Among Defendants Because it Creates an Extremely High Base-Level for Even Low-Level Offenses

Currently, the base offense level for merely receiving child pornography is 22 – the same as for vehicular manslaughter (*see* U.S.S.G. § 2A1.4).  The Sentencing Commission originally set the base offense level for receipt at 10, but has been required by Congress to raise it numerous times.[8]  Regardless, the Government contends § 2G2.2's high offense level is appropriate for any person who receives child pornography because of the chance that he will molest children in the future, or that he has in the past [Doc. 40 at 13-14].  However, the record has no evidence to suggest that Kelly ever has or ever will molest children.  The Government's speculation is directly contrary to submissions by Kelly's therapist and Kelly's psychiatrist, who each agree that Kelly is not a danger to others and does not fit the profile of a molester.  Kelly does not occupy a position of trust with children and has never been accused of hands-on abuse.  Moreover, "empirical testing disproves the fear that the typical child pornography defendant will go on to molest children."[9]

The Government's position is that this Court should sentence Kelly for a wholly distinct crime which the Government has failed to gather any evidence to prove, or even charge.  This is no different than arguing the Court should sentence every defendant pleading to a bank robbery to the maximum punishment, on the theory he most certainly must have previously robbed other

---

[8] USSC, *History of Child Pornography Guidelines*, at 19.

[9] Stabenow, *Myth of Careful Study*, at 31.

banks, or will in the future. Indeed, the Second Circuit found it reversible error to sentence a child pornography defendant under the presumption that he would inevitably graduate to hands-on abuse. The Second Circuit was "troubled by the district court's apparent assumption that [the Defendant] was likely to actually sexually assault a child, a view unsupported by the record evidence yet one that plainly motivated the court's perceived need 'to protect the public from further crimes of the defendant.'" *Dorvee*, 616 F.3d at 183. Any Guideline based on unsupported fears, rather than actual evidence, is far more likely to render an unreasonable sentence. *See Kimbrough*, 552 U.S. at 97-98. Should the Government choose to focus its prosecutions on those who physically assault children, instead of those who view pornography, this Court will not hesitate to levy the appropriate sentences. However, this is not such a case, and the Court will not impose such a sentence for hypothetical behavior. "[T]he Court cannot make [Defendant] a surrogate for the monsters who prey on child victims through actual contact." *United States v. Grober*, 595 F. Supp. 2d 382, 404 (D.N.J. 2008), *aff'd* 624 F.3d 592; *see also Cruikshank*, 667 F. Supp. 2d at 703 ("Rarely able to catch the monsters that create the images, society reflexively nominates the consumers of this toxic material as proxies for the depraved producers and publishers.").

3. The Guideline Fails to Differentiate Among Defendants Because it Applies Certain Enhancements in Nearly Every Case

The enhancements applicable to a defendant in Kelly's position have increased from a total of 2 levels, as originally drafted by the Sentencing Commission, to 12 levels, also as the result of several Congressional directives. *Compare* U.S.S.G. § 2G2.2 (1987), *with* U.S.S.G. § 2G2.2 (2009). Defendant Kelly is not unique in this regard. As noted by the Sentencing

Commission, there are enhancements for "several specific offense characteristics which are expected to apply in almost every case."[10]  It is no coincidence that these enhancements occur in nearly every case – indeed, they were designed that way.  The Sentencing Commission drafted universally applicable enhancements in an attempt to generate Guideline sentences that more often align with statutory minimums imposed by Congress.  *United States v. Manke*, 2010 U.S. Dist. LEXIS 3757, at *17 n.2, 2010 WL 307937, at *6 n.2 (January 19, 2010).[11]  "This may have been a sensible way of dealing with the issue, but it cannot be considered the product of Commission research and study; rather, it was a method of dealing with changes adopted by Congress."  *Id.*

Four enhancements were applied to Defendant Kelly's sentence which purportedly indicate aggravating factors, but are essentially inherent to the crime itself.  These four factors were present in nearly every case in 2010:  using a computer (present in 96.2% of sentences), the young age of the children (95.6%), the large number of images (96.5%), and sadistic or masochistic images (73.6%).[12]  In addition to applying in virtually every case, these enhancements suffer from a number of substantive flaws.  *See Diaz*, 720 F. Supp. 2d at 1042-43 (discussing substantive flaws with the enhancements).

*Use of a Computer.*  Kelly received a 2-level enhancement under § 2G2.2(b)(6) for using a computer.  As another district judge within our circuit has illustrated, "[a]s widespread as

---

[10] Stabenow, *Myth of Careful Study*, at 25.

[11] citing USSC, *History of Child Pornography Guidelines*, at 44-46.

[12] United States Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2010* at 37-38, *available at* http://www.ussc.gov/Data_and_ Statistics/Federal_Sentencing_Statistics/Guideline_Application_Frequencies/2010/glfreq2010.cfm [herein after USSC, *Use of Guidelines*].

computer use is now, enhancing for use of the computer is a little like penalizing speeding, but then adding an extra penalty if a car is involved."[13]  The computer enhancement was originally created pursuant to a Congressional directive, against the Commission's concern about an enhancement that failed to distinguish between those who massively distribute child pornography and those who, without charge, "email images to a single voluntary recipient."[14]  The Commission concluded that "Congress and the Commission may wish to develop a more finely-tuned system of apportioning punishment in cases involving the use of computers."[15]  Nevertheless, due to Congressional directives, the computer enhancement still applies broadly and fails to distinguish commercial distributers from individual consumers.  *Dorvee*, 616 F.3d at 186.

*Number of Images*.  Kelly received a 4-level enhancement under § 2G2.2(b)(7) for having 580 images.  The Guideline creates a staggered series of enhancements for increasingly large collections of images that, while perhaps intuitively satisfying, are "not linked to any empirical data pertaining to sentencing and the purposes of punishment."  *United States v. Schinbeckler*, 2011 U.S. Dist. LEXIS 112179, at *15-16, 2011 WL 4537907 at *6 (N.D. Ind. Sept. 29, 2011).  Instead, the enhancements are triggered by such arbitrarily low numbers of

---

[13] *Federal Sentencing Practices and the Operation of the Federal Sentencing Guidelines: Reg'l Hearing Before the U.S. Sent'g Comm'n,* at 5 (Nov. 2009) (statement of Robin J. Cauthron, Judge, W.D. Okla.), *available at* http://www.ussc.gov/Legislative_and_Public_ Affairs/Public_Hearings_and_Meetings/20091119-20/Agenda.htm.

[14] United States Sentencing Commission, *Report to the Congress: Sex Offenses Against Children* at 30 (June 1996), *available at* http://www.ussc.gov/Legislative_and_Public_Affairs/ Congressional_Testimony_and_Reports/Sex_Offense_Topics/199606_RtC_Sex_Crimes_Against_Children/SCAC_Executive_Summary.htm.

[15] *Id.* at 30.

images that the majority of defendants receive the highest possible enhancement.[16]  Although 500 images seems high, the nature of file-sharing software is such that offenders often have little control over or awareness of the number of images being downloaded.  *United States v. Burns*, 2009 U.S. Dist. LEXIS 100642, at *24, 2009 WL 3617448, at *7 (N.D. Ill. Oct. 27, 2009).  Because of the internet, "offenders readily obtain the necessary number of images with minimal effort."  *Diaz*, 720 F. Supp. 2d at 1042.   Thus, the number-of-images enhancements fail to reflect the speed and ease with which a large number of files containing multiple images can be accumulated.

Furthermore, despite the assertion that Defendant Kelly personally fueled the online commercial market of child pornography, the tragic realities are such that downloading 500 widely-available images has virtually no effect on the market.  "Sadly, the worldwide market for child pornography is so vast that the relative impact of several hundred additional images is minuscule, yet results in a significant increase in the guideline range."  *Id.*  This Court has had cases involving more than one website operated from eastern Europe.  Moreover, many files are shared using peer-to-peer software without any remuneration.

***Depictions of Sadism or Masochism.***  Defendant Kelly received a 4-level enhancement under § 2G2.2(b)(4) for having one image and one movie file that portray sadistic or masochistic conduct.  This is a perversion which revolts civilized people.  However, the enhancement applies "regardless of whether the defendant specifically intended to possess [or] access with intent to view . . . such materials."  § 2G2.2 Comment Note 2.  Indeed, nothing in Kelly's PSR suggests he

---

[16] USSC, *Use of Guidelines*, at 37-38.  The Guideline provides a 2-level enhancement for 10 to 150 images;  a 3-level enhancement for 150 to 300 images; a 4-level enhancement for 300 to 600 images; and a 5-level enhancement for more than 600 images.  § 2G2.2(b)(7).

specifically searched for sadistic or masochistic images. Again because of file-sharing, these types of images are often accumulated without the intent, or even the knowledge, of the defendant. Due to internet software, "a defendant generally has very little control over the quantity of images he receives or the content of those images (triggering enhancements for depictions of sadistic sex acts and pictures of children under the age of twelve)." *Burns,* 2009 U.S. Dist. LEXIS 100642, at *24, 2009 WL 3617448, at *7. "If harsher punishment is warranted to reduce the demand for material that results in greater harm to children, a defendant who does not specifically seek out the worst should not be treated the same as an offender who does." *Diaz*, 720 F. Supp. 2d at 1043.

    ***Young Children.*** Defendant Kelly received a 2-level enhancement under § 2G2.2(b)(2) for having images of children under twelve. As with images of sadistic or masochistic conduct, these images can also be acquired without the defendant's knowledge. *Burns,* 2009 WL 3617448, at *7. Here, nothing in the record indicates that Kelly specifically searched for images of young children. Kelly stated that he believed all of the images were of those twelve or older.

### E.    Avoiding Unwarranted Sentence Disparities

    When imposing sentences, district courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The child pornography statutes, however, create vastly different sentences for essentially identical conduct.[17] The statutes distinguish between those who "possess" child pornography and those who "receive" it, and impose significantly higher

---

[17] This is notwithstanding the fact that, as discussed at length, § 2G2.2 also creates similar sentences for starkly different offenses.

sentences for the latter. 18 U.S.C. §§ 2252(a)(2); 2252(b)(1). "Receipt" is subject to a 5-year mandatory minimum sentence and 20-year maximum, while "possession" is subject to a 10-year maximum and no minimum. *Id.* In the age of the computer, this disparity defies logic. These two functionally identical crimes can seemingly only be distinguished in terms of which one the Government decides to charge in any given case. *See Grober,* 595 F. Supp. 2d at 398-400 (for the same underlying conduct, a single defendant faced a Guideline range of 51 to 63 months if he pled guilty to charges of possession, versus a range of 235 to 292 months if he went to trial on charges of receipt). In this case, as with virtually all others in this District, the Government chose to charge Kelly with receipt and the mandatory five-year minimum sentence that it carries.[18]

### F.     Available Sentences

A minimum sentence of 5 years' and a maximum sentence of 20 years' imprisonment applies to this case, followed by a term of supervised release of 5 years to life. 18 U.S.C. §§ 2252(a)(2); 2252(b)(1); 3583(k). The conditions of supervised release for sex offenders allow for greater supervision and public protection through a defendant's participation in a mental health program, sex offender treatment, registration as a sex offender, increased monitoring, greater punishments for a violation, and restricted access to any employment involving the internet or children. 18 U.S.C. § 3583(d).

---

[18] This is despite the fact that this Court is frequently presented with plea deals for actual sexual assaults of minors, in which the Government agrees to less than the five years it adamantly defends for computer crimes. Computer crimes are like red light cameras for traffic offenses, as they are easily proven with virtually incontrovertible evidence, and these crimes have an obvious attraction for prosecutors.

G.    **Restitution**

The Mandatory Restitution for Sexual Exploitation of Children Act applies to this case. 18 U.S.C. § 2559. The Act requires the Court to enter a restitution order for the full amount of the victims' losses. However, as is frequently the case, the victims in this case have not been identified.

## Conclusion

Kelly's advisory Guideline sentence of 87 to 108 months imprisonment is far greater than necessary to punish and deter his conduct and protect the public. This is largely due to serious flaws in U.S.S.G. § 2G2.2, which was not drafted pursuant to the Sentencing Commission's usual expertise, and all too frequently generates unjustly excessive terms of incarceration. For Defendant Kelly, the statutory minimum term of imprisonment of 5 years, followed by 5 years of supervised release, is well more than a sufficient sentence.

Dated this 20th day of June, 2012.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE